May it please the court, my name is Lisa Michaels and I represent the state of Colorado. This is a 2254 case, which means that deference is owed to the Colorado Court of Appeals on the claim on which it reached the merits, and petitioner's other claim fails because it was defaulted. I'm planning to discuss the two claims on which the district court granted relief below, but I'll answer any other questions on the other issues as well. Before you get too far into this, so you're saying we do have a final appealable order, all claims were resolved by the district court in some way? All the claims were not resolved, but I think that given the nature of the relief that's requested, I think because relief was granted, I think there is a final appealable order as to the claims that were ruled upon. As to the claims that were not ruled upon, I don't think there's a final appealable order with regard to those claims. But in this case, since it's a state habeas, I'm sorry to get into the weeds, but it's troubled me, wouldn't the petitioner have to have sought a certificate of appealability on those additional issues that were not addressed? Yes, that's the state's position, that those claims are not properly correct. So the claims that I believe are before this court are the ineffective assistance of trial counsel claim and petitioner's right to presence claim. Those are what I plan to discuss, starting with petitioner's claim that counsel was ineffective for failing to call an expert to testify about the victim's medications. Because the court of appeals reached that issue on the merits under 2254, the question here is whether that ruling was reasonable. It was. The court of appeals ruling that petitioner suffered no prejudice was reasonable because extensive testimony was presented at trial about the victim's medications. The testimony of the expert at the post-conviction hearing was not appreciably different. Furthermore, the jury heard actual evidence about the victim's mental status at the time, of the attack, including audio and video recording of the victim just before and just after the attack. Whereas the expert could only speculate about what the victim may have been experiencing at the time. Mr. Hobde argues that the Colorado court of appeals applied the wrong standard looking at prejudice under Strickland. Can you address that? I believe you're referring to what the district court, the district court based its ruling on rather than disagreeing with the court of appeals that there was not a reasonable probability of an acquittal, the district court based its ruling on a reasonable probability of a hung jury. So that's just not the standard. We know from even the Supreme Court's own cases, the language used there indicates that in the trial context, in the trial on the guilt phase, the standard, the language that's used there reflects that the different result under Strickland is an acquittal. And petitioner cited a case in his brief, Wiggins v. Smith, but that case does not bear on the question here because that was the penalty phase of a capital trial where swaying one juror does not result in a hung jury, but it results in an acquittal on the death penalty. So that case has no bearing here. At the very least, it was reasonable, it was a reasonable application of Strickland to require the petitioner to prove a reasonable probability of an acquittal. I'm sorry, go ahead. More to the point, I mean, whether the Supreme Court has specifically said that reasonable probability of a different outcome relates to an acquittal, they have not clearly said it relates to a mistrial. And what we're talking about here in the habeas context, right, is clearly established federal law by the Supreme Court. And so if you can't point to a case that clearly says that, I mean, they cannot, they're done, right? I agree. I think that's exactly right, given the standard here under 2254, again, because that's the type of case that we're talking about. Now, this court can also deny petitioner's claim on deficient performance, and that would be under de novo review. Counsel's performance was not deficient, again, because there was extensive testimony about the victim's medications at trial, and it was reasonable for counsel to rely on that. In fact, we know that that strategy was effective because the jury actually struggled with the victim's credibility with regard to his medications. You said our review was de novo? Well, if you were to, you could deny the claim on a de novo review, and that's how you would reach the deficient performance prong. So if you're looking at... The state didn't reach the deficient performance issue, right? Correct. The court of appeals did not. That's correct. All right. So if this court found that petitioner fails to satisfy 2254, it should be denied on that If it did satisfy that bar, then this court would move to de novo review. Thank you. There's no additional questions on that claim. I'll move on to discussing petitioner's other claim, which is that his right to presence was violated when the trial court allegedly failed to disclose a jury note to the parties, and that's the so-called attacking note. That claim is both defaulted and it fails on the merits. It's defaulted because petitioner failed to fairly present it to the state courts, and it's now barred under state procedural rules. The only time that claim was presented to the state courts was in a written closing argument to the district court following the post-conviction evidentiary hearing. It didn't appear in his post-conviction motions, and it never appeared as a claim in any of the appeals. Mr. Hobde argues that he raised it in his second post-conviction motion. Okay. Is that... My recollection, that may be true. My recollection is that it was raised... 2005 motion. In the supplemental motion? Yes, the supplemental motion. I don't believe that's true. My review of the... I mean, it may be true that that's what he's arguing. My review of the record is that the only place that that claim appears is in, again, the written argument following the evidentiary hearing. A claim... A related claim was raised in the post-conviction motion... The supplemental motion, and that was ineffective assistance of direct appeal counsel for failing to raise that. But that claim does not preserve the claim that we're addressing right now, the right to presence claim itself. Now, with regard to the merits of that claim, first and foremost, it fails because Petitioner has failed to prove the factual premise of the claim, and that is that the jury actually sent the note to the trial court. The record does not support that. That's an assumption that is made by the claim, but the record does not support that assumption. Don't we have a finding that it was... That it was in the trial court record? Are you referring to the state district court order? Yes. There... So there is... The way I... So that factual premise appears in both the state district court order and in the opinion, the Court of Appeals opinion. And in the state district court order, it appears in a section that's titled findings. But I don't believe that the court actually engaged in a fact-finding process with regard to that, which with regard to the factual premise, I believe both courts were merely reciting that factual premise for the purpose of then denying the claim on the actual ground that it denied it on, which was that it was untimely. Well, as I read the state district court document, the court was resolving an issue. I mean, the court... There was a question about whether the attacking note was before the direct appeal in the direct appeal context. And the state post-conviction district court said, yes, it was. And so it's not as if this was just a casual description. The court was actually saying what its assessment of the record was. That the note was actually sent? Yes. Are you referring to... Just so I can be clear, are you referring to the Court of Appeals opinion on direct appeal or... It says... I'm looking at page 169 of the record. It says, the jury ultimately... The appeals court addressed jury notes and the defendant contends the Court of Appeals direct appeal appellate counsel and the people all failed to address the attacking other note despite its inclusion in the record. The direct appeal failed and the Court of Appeals burned the conviction. In other words, in this context, the question was whether the attacking note was before the Court of Appeals. This was the post-conviction district court. And the district court said that, yes, it was. It says, going on to page 70, the attacking each other note appeared in the file on record before the Court of Appeals. The Court of Appeals addressed the notes in question stating blah, blah, blah about them. So whether that's true or not, I mean, you know, as you look at the Court of Appeals decision, it's arguable whether, I mean, the direct appeal decision, it's arguable whether they're talking about the attacking other note. But you've got a state district court that has made a finding based upon a question that was raised as to whether it was before the Court of Appeals on direct appeal. And the Court says, yes, it was. So I mean, it seems to me that we're stuck with that, you're stuck with that, in trying to evaluate whether it was out there or not. That doesn't go to the question of, you know, the procedural bar questions that you were talking about earlier. Well, I appreciate your position. And I think that it's very confusing when we're talking about what exactly happened with the notes. And I guess my response to your comment would be that, and I don't have that order in front of me, so I'm not looking at the exact language, but listening to your reading of it, it sounds to me like what the court was talking about was whether the note was actually in the record itself, which it most certainly was. So there's no question about that. But my reading of it, my reading of the record is that, or the opinions, I should say, in the orders was that the question of whether this note was actually sent from the jury to the trial court during deliberations was not posed to either, to any, to the state courts at any time. And so I don't... And ergo, we have no evidence that the trial court ever saw it, or that it ever got out of the jury room. Correct. Because I think, I think it's a valid interpretation of the rulings we have that all that discussion tells us is that this note is in the record, was in the appellate record. Correct. That's all we know. I believe that that's true. I believe that that's the case. And because it's petitioner's burden to prove all aspects of the claim, and he has not proved this factual premise, the claim fails on that ground alone. Of course, the claim also failed, even if the jury did send the note, the claim would also fail because any error would be harmless. In the... Given the circumstances here, it was apparent that the jury was deliberating, actively deliberating throughout the deliberations period. It would not have been... It certainly wasn't necessarily, and I would argue, not even appropriate for the court to respond to that note if it had been sent or take any other action. If there's no additional questions at this time, I'd like to reserve my remaining time for rebuttal. May I please the court? My name is Kathleen Lord, and I represent Mr. Hovde. Deference is not owed on claim one, and I guess I would start with Judge Holm's question. The Supreme Court, the controlling, clearly established federal law is Strickland. Everyone agrees with that. Strickland clearly announced that the prejudice standard is governed by a determination of whether there's a reasonable probability of a different result. And a different result depends on the facts and circumstances of the case. So that's the controlling law. That is the controlling law, but in order to flesh out that law so that it covers a case trial, you would need to have a Supreme Court case interpreting Strickland that said that that's exactly what I meant, that in this context, this would also be a different result. And you don't have that. And I would respectfully disagree, and I can't remember the name of the case off the top of my head, but this court, when it was faced with the flip side of a Hilvey Lockard case, you know, which was judging prejudice when a defendant relied on a plea, yeah, I'm sorry. But when this court was faced with the flip of that, where a defendant went to trial and had a fair trial, but had bad advice, I think the lawyer was threatening to withdraw if the defendant accepted the plea. It recognized that the different result, although not under the same name, was the different result. And I think- Well, even if that were true, it would seem to me you have to have one of two things. You either have to have a Supreme Court case that says that different result means mistrial, or you have to have us interpreting the Supreme Court and saying different result means mistrial. And in that latter situation, you're essentially having us saying, this is what we understand the Supreme Court to mean, and therefore that, at least for our purposes, that's what the Supreme Court meant. You don't have either one of those. Well, I think if this court agrees with us that D-1 and D-2 do not apply, and there are several reasons why they don't apply. For example, the Court of Appeals, the Colorado Court of Appeals, relied on the fact that the jury overcame its struggles eventually and returned a guilty verdict. That's not a Strickland analysis. That's objectively unreasonable determination of prejudice. In what Supreme Court case do you have which would tell us that that's an objectively unreasonable determination of prejudice? It's a logical inference. You may disagree with it, but it would seem to me that that suggests that they had a lot of information before them, and they were struggling with it. Well, I think it is an unreasonable and an illogical and an objectively unreasonable application of Strickland, and this is why. Under that analysis, whenever a jury returns a verdict, that would weigh a verdict of guilty. That would weigh on the non-prejudice side of Strickland, and it simply doesn't. Here you have the evidence of Dr. Morton or an expert in toxicology that the jury did not have as a result of deficient performance, because this, unlike many cases, is not a case where the state court said there was not deficient performance. Our state court said, and it happened in the trial court, said using the deferential standard of Strickland, that the jury should have had this expert's opinion. And this expert's opinion goes to the very heart of what was being disputed in what wasn't a strong case. And Strickland recognizes, and I've quoted it in my brief, that you look at all the evidence, and some facts and some errors are going to affect some facts more strongly. And in this case, you have, and it's so critical, I think, to look at what the prosecution was arguing in opening and closing and compare that to what Dr. Morton or someone like him would have testified to. Because the prosecution told the jury, we are giving you everything, the good, the bad, and the ugly. We understand that our witness, who you will not see because you are seeing his testimony in a deposition format, we understand that he was sick, and we understand that he was taking a lot of medications, and we understand that sometimes he hallucinated. But the prosecution asked the jurors to accept that there were times when Mr. Williams was lethargic and tired. But that didn't mean he was confused. And there were times he was lucid. And what Dr. Morton did, or would have done, or consulting an expert like this would have done, is just drive home that that was not correct. It would have given the jury what it needed to see and reliably determine how reliable this witness was. When we're talking about Strickland and what it means, or what it can be extended to mean, and whether we need the Supreme Court to tell us specifically what it means, don't we also have a problem here that the district court relied on a theory, on an argument, that is mistrial or hung jury, that was never raised by the petitioner? You know, that's true. That is true. It is true. And there were additional reasons why we were arguing in front of the district court that deference wasn't applied. One was the unreasonable determination of facts. Well, isn't it a problem that the district court addressed an issue that was not raised by the petitioner? Well, I think it was a semi-threshold issue. Whether deference applies, you know, it wasn't a new claim. The question was whether deference applied and how much deference. And the question is what theory you used to determine that. And we have cases that say if you don't include it in your petition as a theory for relief, it's way done. And I hope that will apply on both sides in this case and when I get to arguing the second claim. But what I will say to this court is that we argued that deference was not owed to the Colorado Court of Appeals determination of prejudice or lack thereof because the court of appeals failed to consider the weakness of the case. The court of appeals recognized there was a weakness but found that because the jury overcame their struggle with the exact issue that an expert like Dr. Morton would have testified on, because they overcame that without that evidence, that there was no prejudice. They, the court of appeals, and this was an argument we made before the district court, said that the legal expert said that he could not be certain that Dr. Morton's type of testimony would have changed the result. And that was unreasonable to rely on that. It's not the standard. And in fact, it wasn't the legal expert's opinion. But the trial court, the state trial court, kept that evidence, his real opinion, out. So I would just refer the court to the several areas in which the Colorado Court of Appeals really wasn't applying. And I think it's so important, I just want to get the Colorado Court of Appeals case first up. Strickland tells the court to review the totality of the circumstances. And it tells the court to look at the facts that are impacted by the deficient performance. In this case, the failure to call an expert in psychopharmacology. Our court of appeals, our state court of appeals, said that there was some duplication of evidence. And that's true. There was evidence that came out of the type of drugs that Mr. Williams was taking, the amount of drugs. But what this expert would have done was let the jury know what that meant. This expert reviewed the deposition testimony of Mr. Williams and could talk to the reliability and the medications he was on during the deposition testimony. This is a case where the prosecution relied on the fact that the deposition court asked a few questions at the beginning of the deposition, saying like, do you know where you are? Do you know what day it is? I find you competent and reliable. You may testify. And that went to the jury. And that was relied on by the prosecutors in showing that Jerry Williams could be trusted. You know, the prosecutor's argument in this case said, you can trust Jerry. We've given you all the information. It's only fair that you knew everything. But there was a real hole here. And Dr. Morton looked at all the medical records, looked at the deposition testimony, looked at all the evidence that he could. And he determined, his opinion was, that Jerry Williams was not reliable. And I would refer the court for a graphic of it to the end of volume six of the transcript, which just presents Dr. Morton's testimony. It shows that one of the key things that the prosecution was doing to show that Jerry Williams was reliable was having people look at him, say, look at him and listen to him on the 911 tape. Look at him on the surveillance officers, because he was an undercover officer. And tell me if he looked like he was his regular self versus being under the influence of morphine. And what Dr. Morton would have done is say, it's not like that. It's not like a switch. People cannot always tell just by viewing whether someone is impaired. And their reliability, their visual acuity, their perception of things is not impacted. And in a case like this, it was so important for a reliable assessment of whether Mr. Hobbs was truly the assailant. Well, don't you think there's a distinction with the difference between an expert who's talking about a hypothetical case and talking about his, and he saw the deposition, but he still, he had no interaction personally with the victim. He had no ability to assess how the victim responded to these drugs. I mean, presumably there's a continuum on all of these things. And so it's not clear that this victim is going to fit the extreme in responding to the drugs this way as opposed to another way. He had no ability to assess that. Yet, you had people testify who knew him, who were around him, who were able to interact with him, and were both from the good and the bad, if I recall. And why isn't it very probative to have that testimony? Why, and if we're talking about prejudice, why is it clear that the testimony qualitatively that you presented would have tipped the balance? And now I'm talking about acquittal. May I respond? Yes. It's because all of the testimony that you just referred to, there was a side of that testimony that the jury never heard. And yes, he didn't see this man, but this is a man who was a real stoic. He also was able to explain how the other experts, the prosecution's experts, were minimizing the impacts. And he, as an expert in psychopharmacology, not an oncologist who's just directed a pain management at that point in the treatment, he would have told the jury that there was another explanation and would have allowed them to understand what all these medications were doing and how it impacted, in a negative way, reliability. And it was his belief, looking at the medical records, and admittedly, he didn't see him. You know, and that's one of the things the Court of Appeals said. They said, you know, he didn't see these people. These other people saw him. They couldn't, Dr. Morton couldn't duplicate what they had said. But he gave something that none of them could. But the question is not whether he added value. As you pointed out, we have a state ruling that indicated that there was deficient performance. And so it's not a question of whether the court would, I mean, the trial lawyer was adequate in not presenting somebody like Dr. Morton. I mean, the question is whether he added so much that he affected the balance, reasonable probabilities that he would affect the balance. This court could have a grave doubt about whether the right person was convicted in this case after 22 years. And I know my, oh, I thought my time was up. I'm sorry. Well, I guess it is up. No, you have 21 seconds. Now 20. Oh, OK. No wonder you were being so kind to me. I thought I was out of time. It won't happen again. Well, go ahead, please. You know, I just ask you to, with an open mind, look at Dr. Morton's testimony and see how it put in a different light all the repeated testimony of individuals that Jerry looked fine to me. And Dr. Morton would have, his sort of testimony would have said that's not the be all and end all. He, in the expert's opinion, was unreliable. Thank you. Thank you, counsel. The jury didn't need an expert to tell it that the victim's medications could have affected his ability to perceive and remember. And we know that they came to that conclusion on their own because they struggled over his credibility with regard to his medications. The jury is capable of assessing credibility, and that's what they did here. They considered the issue, and they resolved it. But more importantly, what we're talking about here, the question is not whether this court, as this court knows, the question is not whether this court would come to it, would decide that there was not, that there was a reasonable probability of an acquittal, but whether it was reasonable for the Colorado Court of Appeals to make that, to make that ruling. And it was. So given the deferential standard and the procedural bars on the other claims, I would ask this court to reverse the district court's order granting relief. Thank you. Case is submitted. Thank you both for your arguments this morning.